UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RABIA QANOUNI, MARCOS FIALLOS, ANA
MARIA VALENCIA, ARNOLD DOBLE, SILIUS
BAZARD, and JUAN ELIAS SANTIAGO PAEZ,

      Docket No.: 18-cv-02763 (RWS)

                        Plaintiffs,

              -against-

D & H LADIES APPAREL LLC; AB & SONS
GROUP, LLC; IAJ APPAREL LLC; 396 B'WAY
REALTY CORP.; SALVA REALTY CORP.; ISAAC
CHETRIT; and ISAK PEREZ,

                        Defendants.
----------------------------------------------------------------X

**AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

RABIA QANOUNI, MARCOS FIALLOS, ANA MARIA VALENCIA, ARNOLD

DOBLE, SILIUS BAZARD and JUAN ELIAS SANTIAGO PAEZ (collectively, "Plaintiffs"), by

and through their attorneys, JOSEPH & NORINSBERG, LLC, as and for their Complaint against

D & H LADIES APPAREL LLC, AB & SONS GROUP, LLC,  IAJ APPAREL LLC, 396 B'WAY

REALTY CORP., SALVA REALTY CORP., ISAAC CHETRIT, and ISAK PEREZ (collectively,

"Defendants"), allege upon personal knowledge as to themselves and their own actions, and upon

information and belief as to all other matters, as follows:

## NATURE OF CASE

1.    Plaintiffs bring this action on behalf of themselves for Defendants' systemic and

continuous violations of: (i) the overtime provision the Fair Labor Standards Act ("FLSA"); (ii)

the overtime provision of the New York Labor Law ("NYLL"); (iii) the minimum wage provision

of the NYLL (N.Y. Lab. Law § 652(1)); (iv) the minimum wage provision of the FLSA (29 U.S.C.

§206(a)); (v) the anti-retaliation provision of the FLSA (29 U.S.C. § 215(a)(3)); (vi) the New York

State Anti-Retaliation Provision, NYLL § 215(1)); (vii) the spread of hours requirement of the New York State regulation, 12 NYCRR § 142 *et seq*.; (viii) the aiding and abetting provision of the New York State Human Right Law ("NYSHRL"); (ix) the requirement that employees furnish employees with accurate wage notice at the time of hiring, and on an annual basis, containing specific categories of information under the NYLL § 195(3), which is the New York Wage Theft Prevention Act (the "NYWTPA"); (x) the requirement that employers engage in an interactive process and provide a reasonable accommodation when needed, pursuant to Tittle 8 of the Administrative Code of the City of New York § 8-101 et seq., also known as the New York City Human Rights Law ("NYCHRL"); and (xi) any other cause(s) of action that can be inferred from the facts set forth herein.

2.      Defendant D & H LADIES APPAREL LLC, has several subsidiaries and/or related entities through which Defendants operate, including but not limited to, defendants, AB & Sons, IAJ Apparel, Salva, and 396 B'way, all of which operate as a joint enterprise of wholesalers, purchasing clothing from Taiwan and China, and selling the merchandise wholesale to retailers, wholesalers, and merchants.  The merchandise is stored, sorted, packed and eventually shipped from Defendants' warehouse located at 5900 Decatur Street, Queens, NY 11385.  In addition to Defendants' warehouse, Defendants also have a retail line of business selling women's clothing through their store located at 25 West 36th St #1, New York, NY 10018, and other locations.

3.      Plaintiffs have worked for Defendants at various times from 2005 to the present. As employees, Plaintiffs performed and continue to perform the following functions: storing, sorting, packing, and shipping the merchandise.  Throughout the course of their employment, Plaintiffs regularly worked as many as seven (7) days a week, and well over forty (40) hours each week.  Defendants engaged in a systematic scheme of, <u>inter alia</u>: i) failing to pay Plaintiffs their

2

statutorily required minimum wages; ii) failing to pay Plaintiffs their statutorily required overtime compensation; and iii) failing to properly compensate Plaintiffs for spread of hours, among other violations. Further, when Plaintiffs objected to Defendants' unlawful practices and requested overtime wages, Defendants engaged in retaliatory conduct.

4.      At all times relevant herein, Defendants deliberately exposed Plaintiffs to dangerous, hazardous and unsafe conditions without providing them with the required protective gear, and without complying with the relevant rules and regulation for protecting workers. Likewise, Defendants consistently demanded that Plaintiffs carry heavy boxes and construction materials without the aid of a trolley. As a result, several of the within Plaintiffs have sustained serious and persistent injuries.

5.      Moreover, in violation of NYCHRL, Defendants, while aware of certain disabilities suffered by Plaintiffs, failed to engage in an interactive process for purposes of allocating a reasonable accommodation.  Further, Defendants arbitrarily denied Plaintiffs an accommodation without justifying any hardship.

6.      In or about 2013 or 2014, an employee filed a claim with the Department of Labor against D & H Ladies Apparel for overtime wages and additional labor law violations. On or about April 2015, the Department of Labor determined that D&H Ladies Apparel had violated the labor law and held Isaac Chetrit personally liable for wages owed.

7.      In 2016, as a result of the deplorable working conditions and unlawful payroll practices, several D&H employees filed an action against D&H, AB & Sons, Mr. Chetrit, and Mr. Perez alleging willful violations of Federal and New York State laws requiring minimum wage and overtime pay for employees, and proper compensation for spread of hours, among other violations. See James Persaud et al. v. D & H Ladies Apparel LLC et al., Case No. 16-cv-05994

(ER) (filed 07/27/2016) (the "Prior Action"). Although the Prior Action was subsequently resolved, the Defendants have continued to violate other employees' rights to minimum wage and overtime pay, resulting in this action.

## JURISDICTION AND VENUE

8.      The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et. seq*. The supplemental jurisdiction of the Court is invoked pursuant to pursuant to 28 U.S.C. § 1367 over all state law claims.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants resides within this judicial district.

## DEMAND FOR A JURY TRIAL

10.      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury in this action.

## PARTIES

11.      At all relevant times herein, Rabia Qanouni ("Mr. Qanouni") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYHCRL and NYWTPA.

12.      At all relevant times herein, Marcos Fiallos ("Mr. Fiallos") was and is a resident of the State of New Jersey and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYCHRL and NYWTPA.

13.      At all relevant times herein, Ana Maria Valencia ("Ms. Valencia") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYCHRL and NYWTPA.

14.     At all relevant times herein, Arnold Doble ("Mr. Doble") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYCHRL and NYWTPA.

15.     At all relevant times herein, Silius Bazard ("Mr. Bazard") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYCHRL and NYWTPA.

16.     At all relevant times herein, Juan Elias Santiago Paez ("Mr. Paez") was and is a resident of the State of New York and is a "person" and an "employee" entitled to protection as defined by the FLSA, NYLL, NYCHRL and NYWTPA

17.     At all relevant times herein, D&H LADIES APPAREL LLC ("D&H") was and is a domestic limited liability company, with its principal place of business located at 25 West 36th Street, Ground Floor, New York, NY, 10018, in the City and the State of New York.

18.     At all relevant times herein, D&H was and is an "employer" within the meaning of the FLSA and NYLL. D&H's qualifying annual business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA.  Additionally, D&H is an "employer" that "employs" four or more "employees" within the meaning of the NYCHRL.

19.     At all relevant times herein, AB & SONS GROUP, LLC ("AB & Sons") was and is a domestic limited liability company, with its principal place of business located at 25 West 36th Street, 2nd Floor, New York, NY, 10018, in the City and the State of New York.

20.     At all relevant times herein, AB & Sons was and is an "employer" within the meaning of the FLSA and NYLL. AB & Sons' qualifying annual business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA.  Additionally, AB &

Sons is an "employer" that "employs" four or more "employees" within the meaning of the NYCHRL.

21.    At all relevant times herein, IAJ APPAREL LLC ("IAJ Apparel") was and is a domestic limited liability company, with its principal place of business located at 25 West 36th Street, Ground Floor, New York, NY, 10018, in the City and the State of New York.

22.    At all relevant times herein, IAJ Apparel was and is an "employer" within the meaning of the FLSA and NYLL. On information and belief, IAJ Apparel's qualifying annual business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA.  Additionally, IAJ Apparel is an "employer" that "employs" four or more "employees" within the meaning of the NYCHRL.

23.    At all relevant times herein, SALVA REALTY CORP. ("Salva") was and is a domestic business corporation, with its principal place of business located at 25 West 36th Street, 2nd Floor, New York, NY, 10018, in the City and the State of New York.

24.    At all relevant times herein, Salva was and is an "employer" within the meaning of the FLSA and NYLL. On information and belief, Salva's qualifying annual business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA. Additionally, D&H is an "employer" that "employs" four or more "employees" within the meaning of the NYCHRL.

25.    At all relevant times herein, 396 B'WAY REALTY CORP. ("396 B'way") was and is a domestic business corporation, with its principal place of business located at 88 Crosby Street, New York, NY, 10012, in the City and the State of New York.

26.    At all relevant times herein, 396 B'way was and is an "employer" within the meaning of the FLSA and NYLL. On information and belief, 396 B'way's qualifying annual

business exceeds $500,000.00, and it is engaged in interstate commerce within the meaning of the FLSA. Additionally, 396 B'way is an "employer" that "employs" four or more "employees" within the meaning of the NYCHRL.

27.     At all relevant times herein, Defendant Isaac Chetrit ("Mr. Chetrit") was and is an owner, shareholder, director, supervisor and managing agent of D&H who actively participated, and continues to actively participate, in the day-to-day operations of D&H, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant D&H.

28.     At all relevant times herein, Mr. Chetrit was and is an owner, shareholder, director, supervisor and managing agent of AB & Sons who actively participated, and continues to actively participate, in the day-to-day operations of AB & Sons, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant AB & Sons.

29.     At all relevant times herein, Mr. Chetrit was and is an owner, shareholder, director, supervisor and managing agent of IAJ Apparel who actively participated, and continues to actively participate, in the day-to-day operations of IAJ Apparel, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant AB & Sons.

30.     At all relevant times herein, Mr. Chetrit was and is an owner, shareholder, director, supervisor and managing agent of Salva who actively participated, and continues to actively

participate, in the day-to-day operations of Salva, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant AB & Sons.

31.     At all relevant times herein, Mr. Chetrit was and is an owner, shareholder, director, supervisor and managing agent of 396 B'way who actively participated, and continues to actively participate, in the day-to-day operations of 396 B'way, and who acted maliciously and is an employer pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the corporate Defendant AB & Sons.

32.     At all times hereinafter mentioned, Mr. Chetrit exercised control over the terms and conditions of Plaintiffs' employment, in that he had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

33.     Defendant Isak Perez ("Mr. Perez") was and is a resident of the State of New York. At all times hereinafter mentioned, he was a manager who exercised control over the terms and conditions of Plaintiffs' employment, in that he had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

## <u>ALLEGATIONS PARTICULARIZED TO EACH PLAINTIFF</u>

**<u>Rabia Qanouni</u>**

34.     In 2010, Defendants hired Mr. Qanouni to work for D&H Ladies Apparel at the D &H warehouse located at 5900 Decatur St., where he is still employed. His duties included filling out order forms, loading the company's trucks with boxes, unloading the trucks when deliveries arrived, and stacking and storing the boxes in the warehouse.

35.     Throughout his employment, Mr. Qanouni has been a full-time employee of Defendants who has worked tirelessly for the Defendants.  Because he had the warehouse keys, Mr. Qanouni frequently had to stay late and work until closing, long after the supervisors had gone home.  As such, on average, he worked thirty (30) hours of overtime per week.

36.     Despite routinely working far in excess of forty (40) hours per week, Defendants failed to pay Mr. Qanouni the statutorily-mandated rate of one-and-one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

37.     Mr. Qanouni was also not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day.

38.     Additionally, Defendants failed to keep accurate time and payroll records as required by law. For instance, for several years, Defendants paid Mr. Qanouni for his Sunday hours *in cash only*, so as to conceal their unlawful wage practices as set forth above. As such, there was no record of the cash compensation.

39.     Likewise, occasionally, when Defendants asked Mr. Qanouni to stay late for a few extra hours, he would be paid a "bonus" *in cash only*, and not at the statutorily-mandated rate of one-and-one-half his straight-time hourly rate of pay.

40.     Mr. Qanouni repeatedly asked Defendants to pay him overtime compensation as required by state and federal law, but Defendants refused, and the refusal was typically peppered with an insult or rude comment, such as, "you're lucky you even have a job."

41.     On or about 2014, Mr. Qanouni's duties were expanded beyond the regular warehouse duties to include deliveries.  Accordingly, Mr. Qanouni requested compensation for the longer hours he was expected to work but, again, Defendants ignored him.

42.     In addition to violating Mr. Qanouni's right to overtime pay, Defendants have violated Mr. Qanouni's rights under the NYCHRL and failed to to engage in an interactive process or provide a reasonable accommodation.

43.     Specifically, during his employment, Mr. Qanouni was tasked with carrying large windows used for construction, with the aid of one or two other guys.  The windows were jointly packaged in containers measuring eight feet in length by seven feet in width and weighing approximately six-hundred pounds.  Shockingly, Defendants did not provide Mr. Qanouni or their employees with trolleys or any similar equipment to move said window containers.

44.     As a result, Mr. Qanouni was forced to use his knee as a support for the window, to help him carry the weight.   This strained his knees considerably and ultimately, caused permanent damages to his knees.

45.     In or about 2013, Mr. Qanouni's physician directed Mr. Qanouni to stop putting pressure on his knees and prescribed him pain medication. Due to continued demands for heavy lifting at work, however, his condition continued to deteriorate. On 12/22/2016, an MRI showed significant damage to his knees. Then, on 01/26/2017, Mr. Qanouni went to an emergency room due to extreme pain to his knees.  The doctor directed him to rest and to do physical therapy, which he completed.

46.     At all times material to this action, Mr. Perez and Mr. Chetrit were fully aware of Mr. Qanouni's condition and understood that he should refrain from lifting heavy objects. Nevertheless, Mr. Perez continued to task Mr. Qanouni with carrying the window containers, without engaging in an interactive process for the purpose of designating him a reasonable accommodation for his disability, which would simply involve a trolley.

47.     In or about 2015, while carrying a window container, Mr. Qanouni lost grip of the window, and it fell on his foot.  As a result, a piece of Mr. Qanouni's sneaker was sliced off and his foot was severely swollen. Although Defendants excused Mr. Qanouni from work the day of the incident, three days later Defendants called Mr. Qanouni and demanded that he return to work. Mr. Qanouni explained that he was still in pain and not yet ready to return to work, but Defendants accused him of exaggerating his pain and insisted that he return to work immediately. Once again, in violation of the NYCHRL, Defendants unjustifiably denied Mr. Qanouni's reasonable request for an accommodation for his disability.

48.     As a result of Defendants' improper and unlawful conduct, Mr. Qanouni's injury to his knees exacerbated. He was required to undergo surgery for his left knee on November 2016 and he is now scheduled to undergo surgery for his right knee in June 2018. Moreover, he continues to suffer from from chronic pain in both his knees.

**<u>Marcos Fiallos</u>**

49.     In 2010, Defendants hired Mr. Fiallos to work for D&H Ladies Apparel at the D &H warehouse located at 5900 Decatur St. His duties included filling out order forms, loading the company's trucks with boxes, unloading the trucks when deliveries arrived, stacking and storing the boxes in the warehouse, and driving. His employment at D&H Ladies Apparel ended in the Spring of 2016, when he was improperly and unlawfully fired.

50.     For the duration of his employment, Mr. Fiallos was a full-time employee of Defendants. Initially he worked from 9:00 a.m. to 6:00 or 7:00 p.m., five (5) days per week, Monday-Friday, and (8) hours a day on Sundays. Thus, Mr. Fiallos was working over fifty (50) hours per week.

51.     Beginning in 2013, Mr. Fiallos worked from 6:00 a.m. to 7:00 or 8:00 p.m., Monday-Friday, plus an additional six hours on Saturday and eight hours on Sunday. Thus, Mr. Fiallos was routinely working approximately 75 hours per week.

52.     Despite working well in excess of (40) hours per week, Defendants failed to pay Mr. Fiallos the statutorily-mandated rate of one-and-one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

53.     Mr. Fiallos was also not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day.

54.     Additionally, Defendants failed to keep accurate time and payroll records as required by law. For instance, for several years, Defendants paid Mr. Fiallos for his Sunday hours *in cash only*, so as to conceal their unlawful wage practices as set forth above. As such, there was no record of the cash compensation.

55.     After the Prior Action was filed, Defendants began to pay Mr. Fiallos by check for overtime hours, including Saturday and Sunday hours, but never at the statutorily mandated rate of time-and-a-half for any hours worked each week in excess of forty (40) hours.

56.     In the spring of 2016, Mr. Fiallos asked Defendants to pay him overtime compensation as required by state and federal law, but Defendants refused.

57.     Shortly thereafter, in retaliation for his complaint regarding lawful wages, Mr. Fiallos was unlawfully fired.

**Ana Maria Valencia**

58.     On or about July of 2005, Defendants hired Ana Maria Valencia to D&H Ladies Apparel at the D &H warehouse located at 5900 Decatur St.  Her duties included pricing merchandise, unloading merchandise, packing merchandise, and stacking and storing the boxes in the warehouse.

59.     For the duration of her employment, Ms. Valencia was a full-time employee of Defendants. She routinely worked over eight (8) hours a day, five (5) days per week, Monday-Friday, and at least sixteen (16) additional hours per month for work on certain weekends.  Further, Ms. Valencia worked a total of two-and-a-half (2.5) extra hours per week as a result of being denied a proper lunch break. Thus, Ms. Valencia worked at least fifty (50) hours per week.

60.     Defendants grossly underpaid Ms. Valencia as she was paid a total of $50.00 in cash per day, in express violation of New York and Federal minimum wage laws.

61.     Further, despite working well in excess of (40) hours per week, Defendants failed to pay Mr. Valencia the statutorily-mandated rate of one-and-one-half her straight-time hourly rate of pay for any hours that she worked each week in excess of forty (40) hours.

62.      Ms. Valencia was also not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day.

63.     Additionally, Defendants failed entirely to keep accurate time and payroll records as required by law. As Ms. Valencia's compensation was tendered in cash only, there are no records whatsoever documenting her compensation.

64.     In addition to violating Ms. Valencia's right to minimum wage and overtime pay, Defendants have violated Ms. Valencia's right to an accommodation under the NYCHRL.

65.     For approximately ten (10) years, Ms. Valencia worked at a close proximity of Mr. Perez on a daily basis.  Mr. Perez was known as a habitual smoker who smoked approximately two packs of cigarettes per day.

66.     On or about December 2015, Ms. Valencia began to experience shortness of breath, dry cough, and chest pains.   Ms. Valencia immediately sought medical treatment and was diagnosed with Pneumonia.  At such time, the Doctor informed her that such condition was a result from excessive exposure to smoke.

67.     Ms. Valencia informed Mr. Perez of her diagnosis and requested that he cease smoking near her.  However, Mr. Perez blatantly ignored her reasonable request and continued to smoke as usual.

68.     Ms. Valencia continues to receive treatment for her condition and continues to self-administer a Nebulizer on a daily basis.  Unfortunately, the effects of the diagnosis continue to persist.

69.     At all times material to this action Mr. Perez was fully aware of Ms. Valencia's diagnosis and of her reasonable request for an accommodation.  Nonetheless, in violation of the NYCHRL, Mr. Perez failed to engage in an interactive process and grant her reasonable request for an accommodation.  Even worse, Mr. Perez would send Ms. Valencia out to the to the store to purchase cigarettes for him.

70.     As a result of Defendants' improper and unlawful conduct, Mr. Valencia's condition has worsened, resulting in significant damage to her left lung.  Ms. Valencia currently receives ongoing treatment and continues to suffer from shortness of breath, dry cough and chest pains.

**Arnold V. Doble**

71.     In or about December 2013, D&H Ladies Apparel hired Mr. Doble to work as a Superintendent for a building owned and/or operated by Defendants. Mr. Doble currently works as a Superintendent for three buildings owned and/or operated by Defendants: the warehouse located at 5900 Decatur St. and two commercial buildings. Mr. Doble is paid through Defendant Salva.

72.     Mr. Doble's duties include opening and closing the buildings, moving out garbage, cleaning, and deliveries. His duties also include maintenance, boiler work, mechanical work in elevators, and snow shoveling.

73.     For the duration of his employment, Mr. Doble has been a full-time employee of Defendants. He routinely worked from 7:30 a.m. to somewhere from 6:00 and 8:00 p.m. Monday through Friday, plus an additional 8 to 10 hours on Saturdays or Sundays (but not both). Thus, Mr. Doble worked on average seventy (70) hours per week. Further, since 2017, when he started making deliveries to New Jersey, Mr. Doble has started his work day at 5:00 a.m. Thus, Mr. Doble's hours have increased, and he currently works on average eighty (80) hours per week.

74.     Despite working at eighty (80) hours per week, Defendants failed to pay Mr. Doble the statutorily-mandated rate of one-and-one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty (40) hours.

75.     Mr. Doble was also not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day.

76.     Additionally, Defendants failed to keep accurate time and payroll records as required by law. For instance, for several years, Defendants paid Mr. Doble for his Sunday hours

*in cash only*, so as to conceal their unlawful wage practices as set forth above. As such, there was no record of the cash compensation.

77.    After the Prior Action was filed, Defendants installed a punch in clock that employees supposedly could use to record their hours. However, the punch-in clock is a sham. It is kept in a supervisor's locked office and is not turned on the until the supervisor arrives for work at 9:00 or 9:30 a.m. Similarly, the punch-in clock is unavailable after the supervisor leaves at the end of his work day.

78.    Mr. Doble has refused to sign his timesheet because it does not accurately reflect his hours.

79.    In addition to violating Mr. Doble's right to overtime pay, Defendants have violated Mr. Doble's right to an accommodation under the NYCHRL.

80.    Specifically, during his employment, Mr. Doble has been asked to lift and carry heavy boxes. Over time, the continued pressure damaged his shoulder, causing severe pain.

81.    Mr. Doble sought treatment for his shoulder pain and was advised to do physical therapy, which he has done. Unfortunately, the shoulder pain persists.

82.    At all times material to this action, Defendants have been fully aware of the problems Mr. Doble has experienced with his shoulder. Nonetheless, they did nothing to accommodate him. Even worse, one day they refused to allow Mr. Doble to go to the doctor.

83.    Mr. Doble uses his own vehicle for deliveries and spends about $150 per month on gas. Defendants promised that they would give him gas money, but they do so infrequently, and when they do provide gas money, it is insufficient.

**Silius Bazard**

84.     In 2002, Defendants hired Mr. Bazard to work as the elevator man in a building operated by Defendants. When the superintendent of that building left, Mr. Bazard became the superintendent. Additionally, he served as the superintendent of another building operated by Defendants. His duties also included making deliveries.

85.     For the duration of his employment, Mr. Bazard was a full-time employee of Defendants.  His regular working hours were from Mondays through Fridays from 8:00 a.m. to 6:00 p.m., but three (3) days per week he worked until 7:00 p.m. Occasionally he also worked on Saturdays. On average, Mr. Bazard worked fifty-five (55) hours per week.

86.     Despite working at least fifty-five (55) hours per week, Defendants failed to pay Mr. Bazard the statutorily-mandated rate of one and one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty.

87.     Mr. Bazard was also not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day.

**Juan Elias Santiago Paez**

88.     Defendants hired Juan Elias Santiago Paez ("Mr. Paez") on or about January of 2013. He was assigned to work at the D &H warehouse located at 5900 Decatur St.  His duties included filling out order forms, loading the company's trucks with boxes, unloading the trucks when deliveries arrived, and stacking and storing the boxes in the warehouse.

89.     Mr. Paez's employment at D&H Ladies Apparel ended on or about December 2017, when he was improperly and unlawfully fired.

90.     For the duration of his employment, Mr. Paez was a full-time employee of Defendants who routinely worked over forty hours a week. In fact, Mr. Paez worked at least sixty-five (65) hours per week.

91.     Defendants grossly underpaid Mr. Paez as he was paid a total of $50.00 in cash per day, in express violation of New York and Federal minimum wage laws.

92.     Further, despite working well in excess of (40) hours per week, Defendants failed to pay Mr. Paez the statutorily-mandated rate of one-and-one-half his straight-time hourly rate of pay for any hours that he worked each week in excess of forty (40) hours.

93.     Mr. Paez was also not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day.

94.     Additionally, Defendants failed entirely to keep accurate time and payroll records as required by law. As Mr. Paez's compensation was tendered in cash only, there are no records whatsoever documenting his compensation.

95.     On or about December of 2017, Mr. Paez asked Mr. Perez to pay him minimum and overtime compensation as required by state and federal law.  Mr. Perez refused to consider Ms. Paez's request and stated ominously, "feel free to get another job."

96.     Two weeks later, in retaliation for his complaint regarding lawful wages, Mr. Perez unlawfully terminated Mr. Paez's employment.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of the Federal Overtime Pay Requirements, 29 U.S.C. §§ 201-219)*

97.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

98.     Plaintiffs were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one-and-a-half (1 ½) times their regular rate of pay.

99.     These practices were willful and lasted for the duration of all relevant time periods.

100.    These practices are in violation of the FLSA.

101.    By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
*(For Violations New York State Overtime Pay Requirements, NYLL §§ 650 et seq.)*

102.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

103.    Plaintiffs were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one -and-a-half (1 ½) times their regular rate of pay.

104.    These practices were willful and lasted for the duration of all relevant time periods.

105.    These practices are in violation of Labor Law §§ 650 *et seq*.

106.    By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS**
*(For Violations of New York State Spread-of-Hours Requirement, 12 N.Y.C.R.R. § 142-2.4)*

107.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

108.    Plaintiffs were required to work in excess of ten (10) hours a day without being compensated for the legally mandated spread of hours pay.

109.   These practices were willful and lasted for the duration of the relevant time periods.

110.   This practice is in violation of 12 N.Y.C.R.R. § 142-2.4.

111.   By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of the Federal Minimum Wage Requirement, 29 U.S.C. §206(a))*

112.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

113.   29 U.S.C. §206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked.

114.   As described above, the Defendants paid Plaintiff Ms. Valencia *less* than the relevant minimum wage requirement.

115.   This practice was in violation of 29 U.S.C. §206(a).

116.   By reason of the foregoing, Ms. Valencia is entitled to the minimum rate of pay that she was legally due under the FLSA's minimum wage provisions. Ms. Valencia is also entitled to liquidated damages and attorneys' fees for the Defendants' violation of the FLSA's minimum wage provisions.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of the New York State Minimum Wage Requirement, NYLL § 652)*

117.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

118.   New York Labor Law § 652 requires that employers compensate their employees at a minimum hourly rate of:

- $7.15 on and after January 1, 2007.
- $8.00 on and after December 31, 2013.
- $8.75 on and after December 31, 2014.

- $9.00 on and after December 31, 2015.
- $11.00 on and after December 31, 2016.

119.     As described above, the Defendants paid Ms. Valencia and Mr. Paez *less* than the relevant minimum wage requirement.

120.     This practice is in violation of Labor Law § 652.

121.     By reason of the foregoing, Ms. Valencia and Mr. Paez are entitled to the minimum rate of pay that they were legally due under the NYLL's minimum wage provisions. Ms. Valencia and Mr. Paez are also entitled to liquidated damages, interest, and attorneys' fees for the Defendants' violation of the NYLL's minimum wage provisions.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violation of the New York Labor Law § 195 (3))*

122.      Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

123.     New York Labor Law §195 (3) and the NYWTPA requires that employers furnish employees with wage statements containing specific enumerated criteria on each occasion when the employer pays wages to the employee.

124.     The Defendants did not issue accurate pay stubs to any of the within Plaintiffs in violation of New York Labor Law §195 (3) and the NYWTPA.

125.     Specifically, Plaintiffs were not given pay stubs which accurately reflected the number of overtime hours they worked, as Plaintiffs were paid in cash for *some* of their hours and Ms. Valencia and Mr. Paez were paid in cash only during the entire duration of their employment. Moreover, the overtime pay rate was incorrect, as Defendants failed to pay Plaintiffs for their overtime hours at the required statutory rate.

126.     This practice was willful and was in violation of New York Labor Law § 195 (3) and the NWTPA.

127.     By reason of the foregoing, Defendants are liable in an amount to be determined at trial plus liquidated damages, costs and attorneys' fees.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AGAINST DEFENDANT ISAK PEREZ**
*(For Violations of the Aiding and Abetting Provision of NYCHRL).*

128.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

129.     Defendant Mr. Perez knowingly and recklessly aided and abetted the unlawful employment practices against Plaintiffs stated herein, in violation of the NYCHRL.

130.     As stated at length above, Mr. Perez was fully aware of inter alia: (i) Mr. Qanouni's injured knees and his need for a reasonable accommodation, including but not limited to, a trolley; (ii) Mr. Doble's injured shoulder and his need for a reasonable accommodation, including but not limited to, a trolley; and (iii) the injuries Ms. Valencia sustained as a result of being exposed to Mr. Perez's unlawful indoor smoking.

131.     As a direct and proximate result, Plaintiffs have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation and benefits, for which they are entitled to an award of monetary damages.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS**
*(For Violation of the Federal Anti-Retaliation Provision, 29 U.S.C. § 215(a)(3))*

132.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

133.     The Fair Labor Standards Act § 215(a)(3) makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... related to" FLSA's provisions.

134.   As stated at length above, Mr. Fiallos made a complaint to Defendants for their failure to properly compensate him in violation of the FLSA and NYLL.  Shortly thereafter, Mr. Fiallos was unlawfully terminated.

135.   The temporal proximity between Mr. Fiallos' complaint and his termination gives rise to an inference of retaliation.

136.   To the extent that Defendant Isak Perez or other supervisors engaged in the retaliatory actions complained of herein, D&H, AB & SONS GROUP, and Isaac Chetrit are vicariously liable for the retaliatory actions of their employees.

137.   By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorney's fees.

### AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For Violations of the New York State Anti-Retaliation Provision, NYLL § 215(1))*

138.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

139.   New York Labor Law § 215(1) provides that "No employer ... shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer...that the employer has violated any provision of this chapter [the Labor Law]."

140.   Mr. Fiallos made a complaint to his employer about Defendants' failure to properly compensate him in violations of the NYLL.  Shortly thereafter, Mr. Fiallos was unlawfully terminated.

141.   The temporal proximity between Mr. Fiallos' complaint and his termination gives rise to an inference of retaliation.

142.    Likewise, Mr. Paez made a complaint to Mr. Perez about Defendants' failure to properly compensate him in violations of the NYLL.  Two (2) weeks later, in retaliation for his complaint, Mr. Perez unlawfully terminated Ms. Paez' employment.

143.    The temporal proximity between Mr. Paez's complaint and Defendants' unlawful termination gives rise to an inference of retaliation.

144.    To the extent that Defendant Isak Perez or other supervisors engaged in the retaliatory actions complained of herein, D&H, AB & SONS GROUP, and Isaac Chetrit are vicariously liable for the retaliatory actions of their employees.

145.    By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorney's fees.

### AS AND FOR A TENTH CAUSE OF ACTION AGAINST DEFENDANTS
(*Failure to Accommodate under the NYCHRL*)

146.    Plaintiffs repeat, reiterate, and re-allege each allegation set forth above with the same force and effect as if more fully set forth herein.

147.    The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's disability.

148.    Mr. Qanouni, Mr. Doble, and Ms. Valencia are employees and qualified as persons with a disability as those terms are defined under the NYCHRL.

149.    Defendants knew or should have known that Plaintiffs, Mr. Qanouni, Mr. Doble, and Ms. Valencia needed an accommodation under the NYCHRL and that they could only deny the accommodation by demonstrating undue hardship

150.    Nonetheless, Defendants refused at all relevant times to engage in a good faith interactive process and failed to provide a reasonable accommodation to Mr. Qanouni, Mr. Doble, and Ms. Valencia.

151.     As a result of the foregoing, Plaintiffs' injuries have worsened, and they require ongoing medical treatment.

152.     By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

2.     A judgment declaring that the practices complained of herein are unlawful and in violation of FLSA, NYLL, and NYCHRL, as detailed herein;

3.     An award to the Plaintiffs for all damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices, and liquidated damages;

4.     An award to the Plaintiffs of compensatory damages, including but not limited to damages for emotional pain and suffering where appropriate;

5.     An award to the Plaintiffs of pre-judgment interest at the highest-level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

6.     An award to the Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties;

7.     An award to the Plaintiffs of exemplary damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional conduct where appropriate;

8.     An award to the Plaintiffs for costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, and expert witness fees; and

9.     Any other and further relief as this Court finds necessary and proper.

Date:   New York, New York
        April 13, 2018

                                        Respectfully submitted,


                                        **JOSEPH & NORINSBERG, LLC**


                                        By: _____
                                        Chaya M. Gourarie, Esq.
                                        Diego O. Barros, Esq.
                                        225 Broadway, Suite 2700
                                        New York, New York 10007
                                        (212) 227-5700
                                        *Attorneys for Plaintiffs*


Arthur J. Robb, Esq.
Clifton Budd & DeMaria, LLP
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, NY 10118
212-687-7410
*Attorneys for Defendants*