

**Tel (212) 227-5700**
**Fax (212) 656-1889**
_____
www.employeejustice.com

**Michael R. Minkoff, Esq.**
Michael@employeejustice.com

**Manhattan Office**
110 East 59th Street, Suite 3200
New York, NY 10022

**Queens Office**
69-06 Grand Avenue, 3rd Floor
Maspeth, NY 11378

December 5, 2022

<u>Via ECF Only</u>
Honorable Valerie Figueredo
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   <u>*Qanouni, et al. v. D&H Ladies Apparel LLC, et al.*</u>,
             **Docket No.: 1:18-cv-02763 (VF)**

Dear Judge Figueredo:

      As the Court knows, we represent the Rabia Qanouni, Marcos Faillos, Ana Valencia, Arnold Doble, Silius Bazard, and Juan Elias Santiago Perez (collectively, "Plaintiffs") in the above-referenced action, pending in the Southern District of New York. The Plaintiffs in this action allege that they are former employees of Defendants D & H Ladies Apparel LLC ("D&H"), AB & Sons Group, LLC, IAJ Apparel LLC ("IAJ"), ILE Clothing, LLC ("ILE"), 396 B'way Realty Corp., Salva Realty Corp., Isaac Chetrit, and Isaac Perez s/h/a "Isak Perez," (collectively "Defendants") ("Defendants," together with Plaintiffs, as "the Parties"), bringing claims that arise under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA") (collectively the "Claims"). The Parties have reached a settlement in principle following a private mediation, which they have now reduced to a formal written agreement ("Agreement"), attached hereto as **Exhibit A**. We write now, on behalf of the Parties, to explain the terms of the Parties' settlement with respect to Plaintiffs' FLSA claims, and to seek approval of the settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

I. **Relevant Factual and Procedural Procedural History**

Plaintiffs filed this action on March 28, 2018, Dkt. No. 1, asserting claims against their alleged employers for, *inter alia*, unpaid overtime compensation in violation of the FLSA and NYLL.

Plaintiffs allege that Defendants operated as a joint enterprise of wholesalers and retailers, purchasing clothing from Taiwan and China, and selling the merchandise, both wholesale to retailers, and as a retailer themselves (for a time) at a clothing store, allegedly owned by the Chetrit family, including Defendant Isaac Chetrit. The merchandise was stored, sorted, packed and eventually shipped from Defendants' warehouse located at 5900 Decatur Street, Queens, NY 11385. In addition to Defendants' warehouse and retail store, Plaintiffs claim Defendants owned, *inter alia*, a supermarket, parking lot, and various other commercial and residential buildings.

Plaintiffs allege that they worked for Defendants in various capacities ranging from drivers, packers, loaders, and building superintendents, from as early as 2005. Plaintiffs allege that despite working over forty hours during virtually all weeks, Defendants never paid them overtime compensation, and instead only paid them, at most, at their hourly rates of pay for many hours, and in some instances failing to pay them for all hours worked.

On April 13, 2018, Plaintiffs filed an Amended Complaint, Dkt. No. 8, and on June 15, 2018, Defendants answered, denying all of Plaintiffs' material allegations. Dkt. No. 25. On May 3, 2019, after the parties had engaged in substantial discovery, Defendants filed an Amended Answer, adding as a defense the Motor Carrier Act ("MCA") exemption under the FLSA and NYLL.

Discovery continued, and the parties conducted seven depositions - - one for each of the six Plaintiffs, plus one for Defendant Isaac Perez. After these depositions, the parties engaged in additional paper discovery and depositions, leading to Plaintiffs filing a motion to compel on December 27, 2019, Dkt. No. 67. In response to Plaintiffs' motion, Magistrate Judge Freeman convened a discovery hearing on February 5, 2020, during which the parties argued extensively regarding the merits of Plaintiffs' claims, the discovery dispute at issue, Defendants' MCA exemption, and the prospect of Plaintiffs filing a Second Amended Complaint to add as a Defendant new party ILE, as a potential successor entity (along with already-named Defendant IAJ) to held jointly liable as successors of Defendant D&H. That is, discovery revealed that at some point between 2015 and 2017, Defendant D&H ceased operations and divided its business operations into two entities: IAJ and ILE, with one entity handling undergarments and the other handling ladies' dresses.

Thereafter, Plaintiffs filed a motion to amend their pleading on March 13, 2020. Just over one year later, the Court granted that motion on March 23, 2021, Dkt. No. 90, and Plaintiffs filed a Second Amended Complaint on April 13, 2021, adding ILE as a new party, Dkt. No. 92. Additional discovery requests and responses were served, additional discovery disputes arose, and Plaintiffs filed another motion to compel on November 16, 2021. On March 9, 2022, Judge Freeman held a discovery conference in response to Plaintiffs' motion, which the Court granted in part, and extended the deadline to complete discovery to allow for an additional Rule 30(b)(6) deposition, and additional paper discovery on the issue of Defendant ILE's potential liability as a successor.

Shortly thereafter, the parties agreed to conduct a mediation, which was held on May 19, 2022 before Stephen Sonnenberg, Esq., a well-respected mediator and arbitrator at JAMS. The matter did not settle at mediation, but the parties continued negotiating over the course of the next several months, ultimately reaching an agreement in principle on September 16, 2022. The parties have now reduced their agreement to writing, reflecting the following terms:

## II.  Settlement Terms

The $150,000.00 settlement ("Settlement Sum") will be distributed as follows:

- Rabia Qanouni: $37,083.20

- Marcos Fiallos: $25,306.20

- Ana Valencia: $17,727.20

- Arnold Doble: $15,010.20

- Silius Bazard: $1,691.20

- Juan Elias Santiago Paez: $7,124.20

- Joseph & Norinsberg, LLC: $46,057.80, representing litigation costs ($8,660.64) and attorneys' fees ($37,397.16), the latter of which is approximately 25% of the gross Settlement Sum.

The Settlement Sum will be paid via ten (10) separate installments, with the first payment due within thirty (30) days from the Parties' agreement in principle, and all successive payments due within thirty (30) days thereafter. Defendants' counsel will hold all payments in escrow until seven (7) days after the Court's approval of the Parties' agreement, and will then simultaneously issue all checks whose due date had accrued, thereby benefitting Plaintiffs and enabling them to receive several payments all at once. In addition, Defendants will send *all* payments via post-dated

checks to Plaintiffs' counsel, which will be held in escrow and delivered to Plaintiffs once they the payments become due, further limiting any administrative delays that might hinder Plaintiffs' receipt of their respective shares of the Settlement Sum.

In the event of non-payment, or should any checks bounce, Plaintiffs will notify Defendants of their breach and afford Defendants ten (10) business days to cure any breach. If the breach remains uncured, Plaintiffs will be able to petition this Court for enforcement of the agreement, including acceleration of any remaining unpaid amounts, plus liquidated damages of 50% of any unpaid amounts that remain of the Settlement Sum. These provision help ensure prompt and timely payment of the Settlement Sum.

For the reasons described below, Plaintiffs, on behalf of all Parties, respectfully submit that this amount and allocation is fair and reasonable under the circumstances and request that the Court approves the settlement.

### III. The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Gonzalez v. Lovin Oven Catering of Suffolk, LLC*, 2015 WL 6550560, at *2 (E.D.N.Y. Oct. 28, 2015) (applying *Wolinsky* factors on a *Cheeks* approval motion). The Parties submit that their settlement of Plaintiffs' FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors.

#### A. *Range of Possible Recovery*

As referenced above, two core legal issues drastically impacted the range of potential recovery in this action: whether Plaintiffs were exempt employees under the FLSA's MCA

exemption, and whether Defendants IAJ and ILE had any liability as successors to Defendant D&H.

### i. *The MCA exemption*

There was no dispute that Plaintiffs, other than Silius Bazard (who worked as a building superintendent), were all involved with handling, packing, shipping, loading, and in some instances driving Defendants' apparel, which were all shipped and delivered across state lines. The vehicles used to perform these shipments all fell under the jurisdiction of the Department of Transportation, triggering a potential MCA exemption under the FLSA (and NYLL).

Moreover, there was no dispute that the shipments of these goods, and the driving, loading, and helping that Plaintiffs performed, occurred in large vehicles that weighed more than 10,000. This fact is critical to Plaintiffs' overtime claims under the FLSA, because in 2008, Congress amended the MCA by passing the SAFETEA–LU Technical Corrections Act ("the Corrections Act"), Pub.L. No. 110–244, 122 Stat. 1572. As relevant to this action, the Corrections Act defined a "covered employee" under the FLSA as "an individual":

(1) who is employed by a . . .motor private carrier . . . ;

(2) whose work, *in whole or in part,* is defined-

> (A) as that of a driver, driver's helper, loader, or mechanic, and
>
> (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . and

**(3) who performs duties on motor vehicles weighing 10,000 pounds or less.**

The dispute in this matter, however, would turn on whether any of the Plaintiffs spent "part" of their week driving, loading, of helping to drive or load any small vehicles under 10,000 pounds. *See, e.g., Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, 2015 WL 5567073, at *6 (E.D.N.Y. Sept. 21, 2015) ("even though a driver is subject to [Department of Transportation's] general maximum-hours regulations, the FLSA's overtime-wage provisions apply to that driver if he spends all *or part* of his time driving a small vehicle."). The Defendants produced records indicating that they operated vehicles that weighed over 10,000 pounds. The Plaintiffs alleged that a van was also used that weighed less than 10,000 pounds, and that Plaintiffs sometimes had to drive their own personal vehicles, which also weighed less than 10,000 pounds. No documentary evidence exists that determined what vehicles which Plaintiffs drove, loaded, or helped pack on a daily or weekly basis. Thus, Plaintiffs' and Defendants' differing testimony would almost certainly

lead to a risky trial on the merits, needing additional time and resources before determining whether Plaintiffs or Defendants would prevail.

### ii. *Successor liability*

Regarding the successor issue, Courts in this district have adopted the "substantial continuity" test when determining whether to hold successors liable for the acts of their predecessors. *See, e.g., Bautista v. Beyond Thai Kitchen, Inc.*, 2015 WL 5459737, at *3-4 (S.D.N.Y. Sept. 17, 2015). The substantial continuity test looks to nine factors:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to apply relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether [it] uses the same or substantially the same work force; (6) whether [it] uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [it] uses the same machinery, equipment, and methods of production; and (9) whether [it] produces the same product.

*Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 89 (S.D.N.Y. 2017) (quoting *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985)). This is highly fact-intensive analysis, for which the parties still needed to conduct additional discovery had the case not been resolved. Plaintiffs spent the overwhelming majority of their time working for Defendant D&H – not its successors, IAJ and ILE, making any potential recovery from those potential successors a risky endeavor.

### iii. *Plaintiffs' potential damages*

To calculate Plaintiffs' damages, Plaintiffs' counsel analyzed Plaintiffs' sworn deposition testimony to ascertain their average hours worked per week throughout the relevant period. For some Plaintiffs, Defendants produced time and payroll records, which Plaintiffs' counsel then cross-referenced against Plaintiffs' deposition testimony to fill in any gaps left by the testimony. If Plaintiffs fought off Defendants' MCA exemption defense, indeed if Defendants were unable to prevail on their affirmative defense that any violation were in good faith reliance on the MCA, for the full three-year limitations period under the FLSA, Plaintiffs' maximum damages would be $55,998.84, broken down by each Plaintiff as follows:[1]

---

[1] Under the NYLL's full six-year statute of limitations, which is not subject to *Cheeks* review, Plaintiffs' maximum recovery for combined overtime, straight-time, and spread-of-hours pay - - the latter of which are not recoverable under the FLSA - - would be $168,489.00.

| *Plaintiff*[2] | *OT Owed* |
|---|---:|
| Rabia Qanouni | $24,467.68 |
| Marcos Fiallos | $13,070.62 |
| Ana Valencia | $9,922.02 |
| Arnold Doble | $8,476.65 |
| Juan Elias Santiago Paez | $61.88 |
| *TOTALS* | $55,998.84 |

Of course, if Defendants were correct and if Defendants never had cause to believe that Plaintiffs were entitled to overtime due to the MCA, Plaintiff would have suffered no damages whatsoever. Thus, a realistic range of recovery for Plaintiffs' FLSA claims was between zero and $111,997.68, although Defendants continue to assert that Plaintiffs are entitled to no recovery whatsoever.

Under this proposed settlement, after deducting for attorneys' fees and costs, Plaintiffs will receive a combined total of $103,942.32. This represents approximately 186% of their maximum FLSA damages under a three-year statute of limitations period, or 93% of their FLSA recovery if *including liquidated damages*.[3] These amounts would, of course, be reduced by 33% if Defendants could establish that any violations fell short of willfulness - - a reasonable proposition given the hotly contested MCA exemption at issue - - cutting Plaintiffs' statute of limitations down from three years to two years under the FLSA. The outcome here is, therefore, a highly reasonable one under the FLSA. *See, e.g., Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B.   *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, Plaintiffs faced the need to conclude discovery through obtaining final supplement document productions from Defendants, and conducting a last Rule 30(b)(6) deposition. Thereafter, summary judgment motions concerning the thorny issue of successor liability, and a potential

---

[2] Plaintiff Silius Bazard only had damages during his employment under the NYLL, as he concluded his employment prior to the FLSA's three-year statute of limitations period.

[3] Though not necessary for review under *Cheeks*, including the full six-year NYLL damages here, Plaintiffs are receiving 62% of their actual damages after deducting attorneys' fees and costs, further demonstrating the Settlement's reasonableness.

7

MCA exemption, posed a serious threat of substantially whittling down the claims remaining at issue, with a potentially long wait for a trial on any remaining claims should Plaintiffs withstand Defendants' motion. Thus, without the instant settlement, Plaintiffs would face the serious risk of being forced to wait likely more than a year for the outcome of summary judgment and scheduling a trial. Defendant was prepared to immediately file a motion for summary judgment if this matter was not resolved. Thus, at bottom, even if Plaintiffs survived Defendants' summary judgment motion, Plaintiffs faced a difficult challenge in recovering a greater amount than the Settlement Sum.  That is, because Plaintiffs understand that if they were to continue with the litigation - - even if successful - - they may never receive more money than what Defendants are now offering, particularly when considering the additional expense posed by summary judgment motion practice and a potential trial to consume resources now designated for Plaintiffs in the instant settlement. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015).  With litigation risks expected to immediately rise for all Parties, the Settlement Sum is especially fair and reasonable.

### C.     *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place over several months, and concluded only after extensive full discovery, eight depositions, and after an all-day mediation with an experienced and well-respected mediator, Stephen Sonnenberg, Esq.  The assistance of an experienced employment law mediator reinforces that a settlement agreement is non-collusive. *E.g., Hernandez v. Anjost Corp.*, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process."); *Capsolas v. Pasta Res. Inc.*, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) (same). There was no fraud or collusion here.

Regarding the release, of course, in evaluating a settlement, courts generally do not permit releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F.3d at 206). However, this general rule is tempered where - - as here - - a plaintiff brings claims other than wage and hour claims, justifying a release of all employment-related claims. *E.g., Acosta v. Prudent Mgmt., LLC*, 2012 WL 391332, at *3-4 (S.D.N.Y. Feb. 4, 2021). Here, the release in the Parties' Agreement is short of a general release, only going so far as to release all *employment related claims* given Plaintiffs' various discrimination and retaliation claims, fully supporting the fairness of the release and enabling the Parties to put all of their disputes behind them. Likewise, the Agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v.*

8

*Carlson Rests., Inc.*, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177-78 (S.D.N.Y. Mar. 30, 2015)); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks*, 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); with *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing Cheeks, 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

### D.      *The Requested Attorneys' Fees are Reasonable*

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $37,397.16, which amounts to approximately 25% of the total gross Settlement Sum. This is a substantially lower percentage fee than what courts in this Circuit routinely approve - - as the typical fee award amounts to one-third of the total settlement, thereby demonstrating its reasonableness. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of Plaintiff and their attorneys more fully'"); *see also Kornell v. Haverhill Ret. Sys.*, 790 Fed. App'x 296, 298 (2d Cir. 2019) (approving attorneys' fees award of one-third the gross settlement sum - - not one-third the net settlement sum after deduction of attorneys' fees - - and finding that trial court decision to grant same was permissible as long as "its award of attorneys' fees is reasonable."); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Moreover, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v.*

9

*Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Between September 22, 2021 and December 5, 2022 while finalizing this motion, Plaintiffs' counsel has billed over 129.5 hours on this file, for a total lodestar fee of $33,230.00 after exercising reasonably billing judgment, if calculated pursuant to the lodestar.[4] Considering that Plaintiffs' counsel heavily litigated this matter for more than three years *prior to* September 2021, this lodestar fee represents a small fraction of the actual hours expended in litigating this matter.

Nevertheless, even if the Court were to analyze Plaintiffs' counsel's requested fee award solely based on the submitted billing records, Plaintiffs' counsel's requested fee amounts to merely a modest 1.13 multiplier. This is well within the range of reasonableness that courts routinely approve. *E.g. Suarez v. Rosa Mexicano Brands Inc.*, 2018 WL 1801319, at *1-*2 (S.D.N.Y. Apr. 13, 2018) (awarding 33.33% attorneys' fee of $1,200,000.00 in a $3,600,00.00 settlement, amounting to a 4.62 multiplier, in a claims-made, reversionary settlement for restaurant workers); *Bravo v. Palm West Corp.*, No. 14-cv-9193, Dkt. 62 (S.D.N.Y. Mar. 11, 2016) (awarding $500,000.00 fee, representing 3.5 multiplier in FLSA / NYLL class action); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); *Capsolas v. Pasta Res., Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96). This figure is based on hourly rates of: $450.00 per hour for Jon L. Norinsberg, Esq., Plaintiffs' counsel's firm's managing partner who supervised all work in this case; $350.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and partner on this matter; and $100.00 per hour for paralegals. Courts routinely approve these rates in similar cases. *See, e.g., Carvajal v. Bestcare, Inc.,* Dkt. No. 2:20-cv-01791-JS-ST, ECF # 38 (E.D.N.Y. Feb. 10, 2022) (approving *Cheeks* motion and specifically approving same rates as those requested here by undersigned counsel); *Quinones v. UMVLT, LLC*, Dkt. No. 1:21-cv-00184-JLC, ECF # 29 (S.D.N.Y. July 26, 2021) (in single-plaintiff FLSA matter wherein undersigned counsel was lead attorney, expressly noting allocation of attorneys' fees based on rates comparable to those sought here was "fair and reasonable under the totality of circumstances"); *Delyons v. KA Investigations-Security, LLC*, Dkt. No. 1:20-cv-01763-LB, ECF # 35 (E.D.N.Y. May 20, 2021) (Bloom, *M.J.*) (in matter handled by undersigned counsel as lead attorney, evaluating fairness of FLSA settlement under *Cheeks* and specifically approving fee award based on rates comparable to those requested here); *Abraham v. Promise Home Care, Inc.*, Dkt. No. 1:18-cv-04502-GWG, ECF # 134 (S.D.N.Y. Dec. 1, 2020) (in FLSA/NYLL class action handled by undersigned counsel as lead attorney, approving fees award at 2.37 times lodestar multiplier based on hourly rates comparable to those requested herein); *Patterson v. Premier Construction Co. Inc.*, Dkt. No.: 15-cv-00662-ST (S.D.N.Y. 2017); *Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012); *Marshall v. City of New York, et al.*, 10-cv-2714 (JBW) (VVP) (E.D.N.Y. 2012). *See also Tokareva v. Sec. Serv. Provider Corp.*, 2021 WL

---

[4] Effective September 2021, Plaintiffs' counsel's law firm changed timekeeping systems used to track billable hours. The time entries pre-dating September 2021, dating back to early 2018 when this matter was first commenced, were inadvertently lost when decommissioning the firm's legacy billable hours tracking system. As a result, the lodestar fee is only calculated from September 2021 to the present.

1093877, at *2 (S.D.N.Y. Feb. 16, 2021) (noting hourly rates between $250 and $450 is "appropriate for experienced litigators in wage-and-hour cases" and noting hourly rates between $100 and $150 for paralegal work "found to be reasonable"). Plaintiffs' counsel's September 2021 through present contemporaneous billing records are attached hereto as **Exhibit B**.

Finally, Plaintiffs' counsel seeks reimbursement for its out-of-pocket litigation expenses in the amount of $8,660.64. This includes the initial filing fee, service of process fees, medical record retrieval, deposition costs, a mediation fee (split by the parties, for which Plaintiffs assumed 50% of the cost), and interpreter expenses for Spanish language depositions. Plaintiffs' counsel's expense report reflecting these costs, along with receipts and invoices underlying the report, is attached hereto as **Exhibit C**.

Accordingly, Plaintiffs' counsel's request for a total of $46,057.80 is reasonable.

### IV.   Conclusion

For the forgoing reasons, Plaintiffs, on behalf of the Parties, respectfully request that the Court approve the settlement of Plaintiffs' Claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, and that the Court retain jurisdiction to enforce the terms of the Parties' Agreement. The Parties have attached hereto as **Exhibit D** a proposed order of dismissal for the Court's convenience.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

_____
Michael R. Minkoff, Esq.

Copies to:   Counsel for Defendants (via ECF)